IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| REYNALDO RODRIGUEZ-RODRIGUEZ, ZENAIDA VEGA-SANTIAGO and their conjugal partnership; RADAMES SANTIAGO-LOPEZ and ANGEL O. VELEZ-PACHECO<br>Plaintiffs<br><br>vs<br><br>MIGUEL GABRIEL ORTIZ-VELEZ, in his personal capacity and in his official capacity as Mayor of the Municipality of Sábana Grande; MUNICIPALITY OF SABANA GRANDE, represented by its Mayor; LUIS BAEZ, Sábana Grande Police Commissioner; KATIA MEDINA-PEDRAZA; OSVALDO OCASIO RODRIGUEZ, in their personal capacity and in their official capacity, and as employees, officers, or contractual representatives of the Municipality of Sabana Grande represented by its Mayor MIGUEL GABRIEL ORTIZ-VELEZ, and persons X, Z, and Z, one of them known as Janet, others unknown all conspirators in violation of plaintiffs Reynaldo Rodríguez-Rodríguez, Radamés Santiago-Lopez and Angel L. Vélez-Pacheco's constitutionally protected rights.<br>Defendants | CIVIL 01-1267CCC |

**ORDER**

Before the Court is the verbal motion under Fed.R.Civ.P. 50 made by defendants in open court on July 27, 2005.

The incident giving rise to the complaint occurred on November 2, 2000 at 9:00 P.M., 5 days before the general elections held that year. Plaintiff Reynaldo Rodríguez, a retired policeman, had begun early that day actively campaigning for the New Progressive Party (NPP) in outlying wards of Sabana Grande, using a sound-truck owned by him labeled with NPP propaganda. Around 8:30 P.M., he went to the NPP committee in El Burén Sector of Sabana Grande which is about three blocks from the town plaza, according to his testimony.

CIVIL 01-1267CCC                                         2

He estimated that the Popular Democratic Party (PDP) committee was about 6 or 7 blocks from the plaza.  Since there was no parking at the NPP committee, he decided to go for one more round with the sound-truck, drove toward Francisco Mariano Quiñones street, and continued on to the corner of July 25th street.  He testified that about three blocks from the PDP committee, there was a lot where construction was going on and from that site someone threw a stone at his vehicle.  He immediately turned right, saw no one in the street, parked[1] at the corner of July 25th and Francisco Mariano-Quiñones, got out of the vehicle, looked around, did not see anyone and checked the driver's side window.  He observed a scratch made by the stone and mud residue.  When he stopped to verify the damage, he saw a large group of people coming from behind a PDP van, going out from the Nuñez Street intersection on July 25th Street, which he referred to as the Mayor's group.  Mr. Rodríguez thought of leaving but decided to stay upon seeing the rotating light of a patrol car since he wished to complain to the police about the stone that had been thrown.

      Municipal police officer Katia Medina arrived in an official vehicle.  Mr. Rodríguez made a drawing of the location of the vehicles that were parked, stating that he "was blocked within three vehicles,": an unknown parked car, the police vehicle and a PDP van, and that the PDP committee was about 500 feet from where he was parked.  A jingle of NPP candidate for Governor Pesquera was being played on his sound system and continued throughout the incident.  The police woman parked one or two minutes after Rodríguez.  She approached Rodríguez and asked: "what's going on?," to which he replied nothing, that someone threw a stone at his vehicle and he had stopped to verify the damages.  Although he stated in direct that while verifying the damage and before talking to the police woman he had seen a large group of people running behind a PDP van, on cross-examination his testimony was that minutes passed once he started talking to agent Medina until he saw the Mayor coming, that while talking to her the Mayor was approaching, walking on July 25th street with a group of 20 or 25 persons, and that when he started his conversation with officer Medina people started

---

[1] On cross, he stated that there wasn't anyone when he parked at that spot.

CIVIL 01-1267CCC                                           3

coming out from behind the van traveling from the area of the PDP committee.  He presumed that the people coming from behind the van was the same group as the Mayor's.  While he spoke to the police woman, he first saw the Mayor about ten feet away from him, accompanied by the group of approximately 25 persons and he could see another crowd in the back.  He did not see the Mayor carrying anything in his hands; he walked with his hands outside his pockets.  When Rodríguez finished talking to officer Medina, at a distance of about two feet, the Mayor tells her not to intervene, "I'll take charge of this."  He testified that the Mayor then gestured with his left hand at the police woman to step aside, that he took out a metal object that looked like a blackjack, either from his pocket or waist, and hit him in the eye.

According to Rodríguez, immediately after this the police woman hit him with her baton on the ribs and the crowd, which he later learned could have been 30 to 35 persons, kept on hitting him while he was on the ground.  Although he testified that he threw a punch at the Mayor and did not know if he hit him or not, he later said that he did not know if he hit him in the face.  After being shown previous sworn statements where he admits throwing a punch at the Mayor, stating in one of them that he hit him on the mouth and in another that he hit him on the face and that after this the police woman hit him with the baton on the ribs, he described the sequence of events as follows: I was hit, I threw a punch and hit, Medina hits me.  He elaborated stating that this happened within seconds.

In direct, he mentioned that the police woman, the Mayor and the crowd all pulled him down to the ground, that during the assault the Mayor hit him with the blackjack, the policewoman with the baton, and the crowd with flags and with their feet.  In cross, he testified that after the Mayor hit him he threw a punch to his face and after he felt the blow from Medina's baton, the crowd jumped on him, beat him to the ground and kept hitting him. He explained that at that time the people had surrounded the Mayor, Medina and himself and that the Mayor must have been down on the ground because the crowd jumped on them, that he knew the Mayor was in a mess with the people on the ground and that two or three males, in addition to himself and the Mayor,  could also have been down on the ground.  These

CIVIL 01-1267CCC                                            4

people were also assaulting him. He recognized a young man by the name of Osvaldo Ocasio-Rodríguez who was on top of him and who threw a hard blow to his left knee. Other than the Mayor, the police woman and Ocasio, he did not know anyone else there.

Rodriguez was found guilty of assaulting minor Henry Acevedo on the night of November 2, 2000. (See, defendants' Exhibit C) Plaintiff stated that during his trial on said charge there were testimonies that the assault incident involving the minor happened before the incident with defendant Ortiz-Velez. This judgment of conviction is final since he did not appeal. Rodriguez was found not guilty of assaulting Ortiz-Velez on November 2, 2000,

Plaintiff witness Aníbal Almodovar-Soto, who lives in Sabana Grande close to July 25th and Francisco Mariano Quiñones streets, testified that he heard the announcements of the NPP sound-truck the night of November 2, 2000 around 9:00 P.M. and thought that it was odd that it lasted for such a long time. He went to the corner of Francisco Mariano Quiñones and July 25th streets and saw the Mayor with a group of people. Although he did not see the Mayor or the Mayor's group beating Rodríguez, he saw them while they were leaving the site where Rodríguez was being beaten by a lot of people while on the ground. When Almodovar Soto first got there and saw the Mayor leaving with a group of people he was making violent gestures, and it seemed like the group of people surrounding the Mayor, described as more than five, were taking him away in the direction of the PDP committee. He did not know what the Mayor was shouting because of the sound of the NPP van, but he made violent movements raising both fists. At that time he did not know that the Mayor had been involved in the incident.

Almodovar further explained that he saw a lot of people beating Rodríguez on the ground, stating in cross that he saw more than fifty persons around Rodríguez acting violently. He did not know the persons who where hitting him. He saw the police woman. He was able to get near and described the scene as "scary" and that "everybody was kicking him, with fists, viciously." He went home to call the police, returned and the crowd was still hitting Rodriguez. At that time he did not know who the person being beaten was. He described the situation as dangerous and referred to the crowd as a mob. He made a second unsuccessful

CIVIL 01-1267CCC                                       5

attempt to contact the police.  When he came back the person being assaulted was not there but there were still a lot of people exacerbated and violent.  He believed that the police had not arrived.

Radamés Santiago-López testified that on November 2, 2000 he was a sound man for the NPP committee where he had seen plaintiff at different activities.  At around 9:00 to 9:05 P.M. that night, he was actively campaigning and had reached the intersection of July 25th street with Francisco Mariano Quiñones when he saw a PDP van which was obstructing the lane and also noticed the municipal police patrol car and Rodriguez's vehicle. When he saw Rodríguez' sound truck, he left his vehicle in the middle of the lane because the other vehicles obstructed his own. He walked to the corner where he saw a person being beaten,  he got about 4 feet away from the person by pushing his way through a large crowd and saw the Mayor on top of Rodriguez,  hitting him with fists on the face and the body.  He testified that there were around 50 to 100 people there, and that from 20 to 25 persons came in and out and would hit Rodriguez.  At all times there were at least 10 persons hitting him.  These persons used their fists, feet, and flagpoles to hit Rodríguez.  He was trying to get the people off, when Javier Berrocales, assisted by one Chamaco Ayala, pushed him against a wall, clenched his neck, and told him not to intervene.  They let him go three, four or five minutes later while Rodríguez was still being hit.  He mentioned on cross that Berrocales and Ayala were among those in the large crowd of persons who resented that he had pushed them and that they acted violently against him.  He saw the Mayor leaving five to them minutes after being pinned against the wall.  Four or five persons were grabbing him, two by the arms and the others by the back, as if pushing him away from the place.  He identified four persons in the crowd as municipal employees, specifying that Berrocales worked at Civil Defense and he believes Ayala also, although he did not know the positions they hold.  The other two persons he identified only as Janet and Roberto and he did not know the positions they held at the Municipality.

Together with Angel Vélez-Pacheco, he assisted Rodríguez after the beating stopped, placing plaintiff in his own vehicle.  He saw Rodríguez leave driving his own sound truck.

CIVIL 01-1267CCC                                        6

At the conclusion of plaintiff's evidence, defendants argued their Fed.R.Civ.P. 50 motion which will be separately discussed as to the Mayor, the police officer and the Municipality.

LIABILITY OF ORTÍZ-VÉLEZ

The determinative issue for purposes of 42 U.S.C. § 1983 is whether Ortíz-Vélez was acting as Mayor under color of state law on the night of November 2, 2000. Defendant Ortiz-Velez argues that there is nothing in plaintiff's evidence to support that he was acting under color of law; that the circumstances narrated by plaintiff and his witnesses reflect the acts of a private citizen unrelated to his position as Mayor. Plaintiff counters that Ortíz-Vélez was able to order municipal police officer Medina not to intervene because he was the Mayor and that he was able to attack with a hundred people behind him because he was Mayor. Plaintiff raises three factors in support of his theory that the Mayor was a state actor: (1) that he used his authority as Mayor, (2) that he used human resources of the Municipality of Sabana Grande referring to police officer Medina, and (3) that a reasonable inference can be made that the group of municipal employees that responded did so because he was Mayor.

Our analysis is guided by Supreme Court and First Circuit cases which have dealt with the definition and principles relevant to the "under color of law" analysis pursuant to 42 U.S.C. § 1983.

In United States v. Classic, 313 U.S. 299, 326 (1941), the Supreme Court defined that concept as the exercise of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." The Court adopted this standard for purposes of § 1983 in Monroe v. Pape, 365 U.S. 167 (1961). See West v. Atkins, 487 U.S. 42, 49 (1988). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West, 487 U.S. at 50. But "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." Screws v. United States, 325 U.S. 91, 111 (1945) This is not to say, however, that every action of a

CIVIL 01-1267CCC                                        7

public official is under color of law simply because the official is a public employee.  "[A]cts of officers in the ambit of their personal pursuits are plainly excluded."  Id.  Thus, "we must determine whether [Ortíz-Vélez], at the time and place in question, was engaged in purely personal pursuits or, conversely, whether he was acting under color of state law."  Martínez v. Colón, 54 F.3d 980, 987 (1st Cir. 1993).  The nature of his conduct is assessed in light of the totality of the surrounding circumstances.  Id.

We now examine the totality of circumstances surrounding the November 2, 2000 incident involving defendant Ortíz-Vélez and plaintiff.  We start by noting that there is no evidence of any conspiracy or joint venture between Ortíz-Vélez and officer Medina or between Ortíz-Vélez and PDP supporters who were in the vicinity that night previous to the beating of plaintiff Rodríguez.  The Court of Appeals in its December 8, 2004 decision in this case concluded that it gave "no weight at all to Rodríguez' charges that Medina conspired with Ortíz," dismissing this as a conclusory charge in the complaint and "conclusory rhetoric."  This conclusion has been borne out by plaintiff's trial evidence.  Plaintiff's own testimony was that he stopped unexpectedly about 500 feet from the PDP committee because his NPP sound-truck was hit by a stone thrown by an unidentified person.  There is no evidence that Medina was summoned to the site by Ortíz or anyone else; simply that she was patrolling in the area and stopped and asked Rodríguez what was going on.  They spontaneously engaged in a brief conversation regarding the stone-hurling incident when plaintiff saw the Mayor approaching them from the direction of the PDP committee with a group of 20-25 people and a PDP van.  Rodriguez testified that Ortíz Velez told Officer Medina not to intervene, that he would handle the matter, struck plaintiff in the face with an object described as similar to a blackjack, was hit back by Rodríguez, and thereafter Rodríguez is hit by Medina with her baton in the ribs and then viciously attacked by a mob comprised of about approximately 100 persons.  Whether this physical confrontation was sparked by the fact that same night Rodríguez had been involved in an incident for which he was convicted for assaulting minor Henry Acevedo or due to the partisan rivalries and hostilities intensified by the proximity of the general election only five days away and exacerbated by the presence of an NPP sound-truck

CIVIL 01-1267CCC                              8

playing NPP jingles within 500 feet of the PDP committee where an activity was being held, plaintiff's own evidence describes a sudden occurrence which ballooned into an uncontrolled, irrational and violent scenario.

This occurred on a Thursday, around 9:00 P.M., while Ortíz-Vélez was meeting with other PDP followers at the PDP political headquarters where a bingo was being held. The area of the PDP committee had been cordoned off pursuant to state and municipal police instructions to avoid confrontation between political opponents. The Mayor walked to the site. There is no evidence that he used an official vehicle and no indicia that he made use of any trappings of his position as Mayor. There is no indication that this activity was related in any manner to the position he held or to his duties, nor is there any evidence that Ortíz-Vélez' involvement in the physical confrontation with Rodríguez was related to either of these, or that he could not have engaged in that same conduct had he not been Mayor. The time and place of the incident and the manner in which it spontaneously erupted into mob violence point to Ortíz-Vélez' conduct as personal in nature similar to the conduct of the rest of the crowd. What the evidence shows is that his actions were private ones and that he, one of the persons involved in the melee, happened to be the Mayor.

There is no evidence that he ordered the officer to strike Rodríguez, displaying any ostensible authority as Mayor. Merely telling the officer not to intervene, that he would "take charge of this," without more, is insufficient to establish that he was acting under color of state law. Additionally, plaintiff's evidence shows that Medina did intervene for he charges her in this case with using excessive force against him in handling the situation. Plaintiff also contends that Ortíz-Vélez was accompanied by municipal employees who did what they did because he was Mayor. This argument disregards the fact that plaintiff must prove on the "under color of law" issue a nexus between Ortíz-Vélez' challenged conduct. i.e. beating Mr. Rodríguez because of his political affiliation, and his position as Mayor. What motivated the crowd to act in the way that it did is sheer speculation. In any event, as observed by the Court of Appeals in Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 47-48 (1st Cir. 1999), the primary focus of the color of law analysis must be on the nature of the officer's activities. "Even

CIVIL 01-1267CCC                                                       9

though 'acting under color of law' includes 'acting under pretense of law' for purposes of a state action analysis, there can be no pretense if the challenged conduct is not related in some meaningful way either to the officer's governmental status or to the performance of his duties." Martínez v. Colón, 54 F.3d at 987.

Taking as established, for purposes of the Fed.R.Civ.P. 50 analysis, that Ortíz-Vélez engaged in violent conduct against plaintiff along with others, all of the circumstances surrounding the incident establish that his actions were personal in nature and unrelated to his position as Mayor or to the performance of the duties of that office.[2]

For the above stated reasons, the Fed.R.Civ.P. 50 motion is GRANTED as to defendant Miguel Gabriel Ortiz-Velez.

OFFICER KATIA MEDINA'S LIABILITY

As stated above, Rodriguez testified that while he was inspecting his sound truck for damage from the rock, defendant Medina, who was driving a municipal police vehicle with its light flashing, stopped to ask plaintiff what was going on. At that time she was performing her duties as a municipal police officer. Plaintiff further testified that during the incident that followed, after the Mayor hit him, Medina struck him in the ribs with her baton. Following the "under color of law" analysis above, this evidence supports plaintiff's contention that Medina was acting in her official position as a municipal police officer when she hit him. Regarding the baton strike, the only evidence before the Court at this stage is that Rodriguez was hit by Medina. There is yet no explanation as to why Officer Median hit him or, if she did, if a reasonable officer in her place would have done so.

Although in his complaint Rodriguez conclusorily alleges that Officer Medina incited the mob into beating him, that she failed to protect him from the beating by the mob, and that she obstructed justice by not arresting Ortiz-Velez or prosecuting any of the others involved in the

---

[2] A totally unrelated prior verbal confrontation between plaintiff and five or six of Ortiz-Velez' followers at the Taino Liquor Bar owned by plaintiff's sister, occuring two or three weeks before the brawl that triggered this lawsuit, lends no support to the claim that Ortiz-Velez was a state actor on the night of November 2, 2000.

CIVIL 01-1267CCC                                           10

fracas, plaintiff did not present evidence to support these claims in his appeal nor has he introduced any such evidence at trial.

Accordingly, defendants' Fed.R.Civ.P. 50 motion, with regard to Officer Medina, is DENIED only as to the claim of excessive force based on the baton strike.  The motion is GRANTED as to the remaining claims against her mentioned above.

MUNICIPALITY OF SABANA GRANDE

It is firmly established that municipalities may not be held liable for the constitutional violations of their employees in a § 1983 suit based on a respondeat superior theory of liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018 (1978). Rather, "it is when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694, 98 S.Ct. 2018.  See also Baron v. Suffolk County Sheriff's Department, 402 F.3d 225, 236 (1st Cir. 2005).  Assessing liability against the Municipality requires, at a minimum, that plaintiff's harm be caused by a constitutional violation.  Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005).

Since we have already determined that defendant Ortíz-Vélez, the Mayor of Sábana Grande, was not acting under color of law when he assaulted plaintiff Rodríguez, the Municipality is obviously not liable for his acts.  The issue that remains is whether the Municipality could be held liable to Rodríguez for the acts of municipal police officer Medina if the jury were to determine that she violated his constitutional rights by using excessive force against him.

In this regard, we note that plaintiff has simply failed to present any evidence that would show that there was a custom by municipal police officers of Sábana Grande to use excessive force against the town citizens, or just simply to violate their constitutional rights, that was  "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."  Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir.1989).  Similarly, no evidence

CIVIL 01-1267CCC                                    11

was ever presented demonstrating that Medina was not properly trained in the performance of her duties and that such a failure to train the Municipality's police force was an official policy promulgated by municipal authorities.  Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).   Needless to say, Medina was a line officer so it would be preposterous to suggest that her actions on November 2, 2000, by itself, served to establish an official policy of the Municipality which would then make the latter liable to Rodríguez.  Kelly v. Laforce, 288 F.3d 1, 9 (1st Cir. 2002).  See also Okla. City v. Tuttle, 471 U.S. 808, 811, 823-24, 105 S.Ct. 2427 (1985) (one shooting by a single police officer was insufficient to establish municipal liability for inadequate officer training).    In light of these circumstances, the Municipality is simply not liable to Rodríguez for any unconstitutional acts that may be attributed to Medina.  Accordingly, the Fed.R.Civ.P. 50 motion is GRANTED as to the Municipality of Sábana Grande.

     Partial Judgment will enter Dismissing the action against Miguel Gabriel Ortiz Velez in both his official and personal capacities and the Municipality of Sabana Grande. All claims against Katia Medina,  except for the claim of excessive force in violation of the Fourth Amendment, are also DISMISSED.

     SO ORDERED.

     At San Juan, Puerto Rico, on August 1, 2005.

                                                  S/ CARMEN CONSUELO CEREZO
                                                  United States District Judge