IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| REYNALDO RODRIGUEZ-RODRIGUEZ ZENAIDA VEGA-SANTIAGO and their conjugal partnership; RADAMES SANTIAGO-LOPEZ and ANGEL O. VELEZ-PACHECO<br><br>Plaintiffs<br><br>vs<br><br>MIGUEL GABRIEL ORTIZ-VELEZ, in his personal capacity and in his official capacity as Mayor of the Municipality of Sabana Grande; MUNICIPALITY OF SABANA GRANDE, REPRESENTED BY ITS MAYOR; LUIS BAEZ, SABANA GRANDE POLICE COMMISSIONER KATIA MEDINA-PEDRAZA OSVALDO OCASIO-RODRIGUEZ, in their personal capacity and in their official capacity, and as employees, officers or contractual representatives of the Municipality of Sabana Grande represented by its Mayor MIGUEL GABRIEL ORTIZ-VELEZ<br>and persons X, Z and Z, one of them known as Janet, others unknown all conspirators in violation of plaintiffs Reynaldo Rodríguez-Rodríguez, Radamés Santiago-López and Angel L. Vélez-Pacheco's constitutionally protected rights<br><br>Defendants | CIVIL 01-1267CCC |

## OPINION AND ORDER

This civil rights action in which defendants Miguel Ortiz Vélez, Katia Median, Osvaldo Casio and the Municipality of Sabana Grande prevailed, is now before us on their Application for Attorneys' Fees and Costs filed October 18, 2005 **(docket entry 144)**. The facts of the case, based on allegations of injuries resulting from a brawl between members of Puerto Rico's two major political parties, the New Progressive Party (NPP) and the Popular Democratic Party (PDP), are adequately set out in the Court's opinion of August 1, 2005, (docket entry 127). It suffices to say that by the end of the plaintiffs' case in chief at trial, all claims against all defendants, except for the excessive force claim by Rodríguez against police officer Katia Medina had been dismissed. The remaining claim was dismissed at the close of the defendant's case on a second Rule 50 motion, when the Court found that Medina's actions were protected by qualified immunity (docket entry 136). Plaintiffs filed a Motion Requesting Reconsideration

CIVIL 01-1267CCC                                     2

of Judgment, to Amend the Findings or for New Trial (docket entry 138), which the court denied on September 2, 2005 (docket entry 139). No appeal was filed.

Thereafter, albeit one day late, the defendants filed their motion for costs and attorneys' fees, which the court has allowed and now considers. Plaintiffs opposed the motion (**docket entry 145**) and a reply and surreply followed (**docket entries 146 and 147**).

The defendants, having been haled into court by plaintiffs, won a clear-cut victory on all claims against them. A triumphant defendant may qualify as a prevailing party for the purpose of obtaining a fee award. Maine School Administrative District v. Mr. and Mrs. R., 321 F.3d. 9, 16 (1st Cir. 2003).

Plaintiffs opposed the award of attorneys' fees, contending that the suit was filed in good faith, that the motion for attorneys' fees was untimely filed, that the suit was not frivolous or vexatious, and that to award fees to the defendants would have a chilling effect on other potential civil rights plaintiffs. Plaintiffs also raise objections to the amount of fees requested, alleging that "there was a lot of double billing, excessive and unnecessary, substantially based on a computation of hours and charges that are duplicative and redundant, devoted to unsuccessful issues or otherwise unnecessary, also objectional."[1]

Under the so-called "American Rule," litigants must bear the cost of their attorney's fees in the absence of explicit congressional authorization to the contrary. Sepúlveda Carrero v. Rullán, 2005 WL 1949775 (D. Puerto Rico). Congress, however, has authorized the award of attorneys' fee under 42 U.S.C.§1988 for prevailing parties in §1983 cases. Section 1988 makes no distinction on its face between prevailing plaintiffs and prevailing defendants. In Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), the Supreme Court ruled that

---

[1] ¶5, page 3.

CIVIL 01-1267CCC                                           3

prevailing defendants should receive attorneys' fees only when the plaintiff's claim was "frivolous, unreasonable, or groundless," or when "the plaintiff continued to litigate after it clearly became so." Id., at 422.[2]

The court in Christiansburg made clear that a plaintiff need not have acted in bad faith in order to be liable for fees, although if he did, "there will be an even stronger basis for charging him with the attorney's fees incurred by the defense. Id., as cited in Hutchinson v. Staton, 994 F.2d 1076, 1079 (4th Cir. 1993). As to the chilling effect caused by an award of fees to the defendants, when a court imposes fees on a plaintiff who has pressed a "frivolous claim, it chills nothing that is worth encouraging. Hutchinson, supra, at 1080.

Merits of Plaintiffs' Claims

Notwithstanding that the Mayor Ortiz-Vélez of Sabana Grande was participating in the activity, it was obviously an activity of the political party, not a governmental activity, and the mayor was there in his capacity as a member and leader of the party, not exercising the duties of the mayor. We repeatedly found that plaintiffs had no evidence whatsoever that would refute what was obvious:

In our June 30, 2003 order (docket entry 92), we dismissed all claims brought by plaintiffs Radamés Santiago-López and Angel O. Vélez-Pacheco, who claimed that they were deprived of their Constitutional right to liberty when they were prevented from coming to the aide of Rodríguez. When pressed for details, their sworn statements contained no specific references to acts committed by any of the defendants in violation of their constitutional rights or that would give rise to a vicarious liability of the Municipality.

On June 30, 2003 (docket entry 94), the court granted the unopposed motion to dismiss the claim for punitive damages against the Municipality of Sabana Grande and its mayor,

---

[2] Although Christiansburg was actually interpreting §706(k) of Title VII of the Civil Rights Act of 1964, this standard was extended to §1988 in Hughes v. Rowe, 449 U.S.5, 14-15 (1988) as well.

CIVIL 01-1267CCC                                  4

Ortiz Vélez.

The first Rule 50 motion resulted in the dismissal of all claims against defendants Ortiz-Vélez, the Municipality of Sabana Grande and all those against Katia Medina, except for the claim of excessive force in violation of the Fourth Amendment. See, Court order of August 1, 2005 (docket entry 127). In analyzing the evidence we found that there was

> "no evidence of any conspiracy or joint venture between Ortiz Vélez and officer Medina or between Ortiz Vélez and PDP supporters who were in the vicinity that night previous to the beating of plaintiff Rodríguez. The Court of Appeals in its December 8, 2004 decision in this case concluded that it gave 'no weight at all to Rodríguez' charges that Medina conspired with Ortiz,' dismissing this as a Conclusory charge in the complaint and 'conclusory rhetoric.' This had been borne out by plaintiff's trial evidence…. There is no evidence that Medina was summoned to the site by Ortiz or anyone else; simply that she was patrolling in the area and stopped and asked Rodríguez what was going on.

Id., at page 7.

> There is no evidence that [Ortiz} ordered the officer to strike Rodríguez, or that any other authority as Mayor Medina had the power to intervene, that he would "declare it," without more, sufficient to establish that he was acting under color of state law . . . that motivated the crowd to act in the way it did is sheer speculation.

Id., at page 8.

> Although in his complaint Rodríguez conclusorily alleges that Officer Medina incited the mob into beating him, that she failed to protect him from the beating by the mob, and that she obstructed justice by not arresting Ortiz-Vélez or prosecuting any of the others involved in the fracas, plaintiff did not present evidence to support these claims in his appeal nor has he introduced any such evidence at trial….
>
> In this regard, we note that plaintiff has simply failed to present any evidence that would show that there was a custom by municipal police officers of Sabana Grande to use excessive force against the town citizens, or just simply to violate their constitutional rights, that was so well settled and widespread that the policy making officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice . . . similarly, no evidence was ever presented demonstrating that Medina was not properly trained in the performance of her duties and that such failure to train the Municipality's police force was an official policy promulgated by municipal authorities.

Id., at pp. 9-11 (Citations omitted.)

The remaining issue was the use of excessive force by defendant Medina. In ruling in favor of Officer Medina's on the second Rule 50 motion, (docket entry 136) based on

...

CIVIL 01-1267CCC                                            5

qualified immunity on an excessive force theory, the court stated that,

> "fact specific analysis mandates that we reject plaintiffs' arguments, bereft of any evidentiary support, that officer Medina sided with Ortiz-Vélez or that they conspired against Rodríguez, that she provoked the crowd to lynch him, that it was her single baton strike which threw him down or that this blow caused him serious injury.
>
> Finally, there is no evidence that of the existence of any law enforcement rule or regulation on the use of a baton that would make her conduct unlawful. Nor has any case been identified which even suggests that, given the specific circumstances that officer Medina confronted, it had been clearly established and she had been given fair warning that her actions violated Rodríguez' constitutional rights.

Id., at pp. 12-13.

The plaintiffs' case was entirely based on conclusory allegations, speculation, and a sprinkling of political paranoia, with no basis in fact or law and for which no scintilla of evidence could be mustered. Although plaintiffs' contend that the case was filed in good faith, it was nonetheless groundless and unreasonable. We question the good faith and common sense in Rodríguez' decision to "go cruisin' for a bruisin'," when he chose to exercise his free speech rights by driving his NPP sound truck into the area of the local PDP headquarters where that political party was holding a rally. We therefore find that defendants are entitled to an award of attorneys' fees.[3]

The Fee Petition

The defendants request the total amount of $99,956.00 for 769.70 hours of work by eight attorneys and an unidentified number of paralegals, and $1,986.74 in costs. Plaintiffs' objections to the requested fees are, for the most part, general in nature:

> "After reviewing Defendants list of attorney's work we found that there was a lot of double billing, excessive and unnecessary, substantially based on a computation

---

[3] The Court of Appeals for the First Circuit, in Rodríguez-Rodríguez v. Ortiz-Vélez, 391 F.3d 36,(1st Cir. 2004), its affirmance of the denial of qualified immunity on the pretrial dispositive motion, stated that "Rodríguez has not offered any supporting evidence or detail to buttress most of his claims. This is not a matter of two conflicting factual claims but of conclusory rhetoric as against sworn, specific statements." P. 41. The court went on to state that "[if Rodríguez loses his case, the defendants are free to apply for attorneys' fees." P. 42.

CIVIL 01-1267CCC                                                6

of hours and charges that are duplicative and redundant, devoted to unsuccessful issues or otherwise unnecessary, also objectionable . . . hundreds of hours were dedicated to the criminal case, to the transcripts which were provided by Plaintiffs, because Defendant's recordings were not usable."

Surreply, at page 4.

Only three specific examples of excesses are given. The Surreply is accompanied by an Exhibit plaintiffs describe as "a comparative table in order to provide this court with an ample view of unfairly of Defendants Petition"[sic]. Although the document is entitled "Comparative Table of Defendants Work Sheet," it makes no comparison, has no explanation, and provides nothing from which any conclusions can be drawn.[4]

If the time claimed by defendants appears unreasonable and excessive to plaintiffs, it was due in great part to the shenanigans of their own counsel, who sought to use this court for appellate review of the commonwealth's criminal proceedings against Rodríguez.[5] Plaintiffs' counsel's willful disregard of the court's order by an attempted unauthorized addition of three witnesses to their witness list, as well as their proffer of testimony of 14 witnesses who had already been excluded resulted in sanctions against the attorney for the waste of judicial resources, and certainly created additional work for the defense. Defendants also had to investigate and respond to plaintiffs' attempt to rehash the state prosecution when they sought to relitigate the matter within the context of this action and announced many witnesses for that purpose. Trial in this case lasted for seven days, and might have ended sooner, but for plaintiffs' counsel unwillingness to abide by the court's rulings and his repeated attempts to bring in matters already excluded.

Using the lodestar method, the hourly rate should be in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

---

[4] The first column contain dates, in no identifiable order, followed by five columns containing attorney's initials, work, time, an unmarked column with unknown initials, and total.

[5] As stated at ¶19 of plaintiffs' Surreply, "Defendants request to be paid for the manipulation of the local DA's...."

CIVIL 01-1267CCC                              7

reputation. Sepúlveda Carrerro, supra, at *2. In reaching the determination, the court may rely upon its own knowledge of attorneys' fees in the community. Id. The fees requested by the attorneys in this action range from $120 to $150 per hour, with $90 per hour requested for the paralegal fees. The requested hourly rates were not challenged by plaintiffs and are well within the fee rates of this community. See, e.g., Sepúlveda Carrero, at *2 and the cases cited therein.

In reviewing the time sheet, however, and in light of the fact that the docket is on-line and was available to the defense attorneys in the preparation of their motion, we find that the time sheet entries are overly vague. By not referring to specific motions titles, docket entries, and other specifics, for most of their entries, defendants make it difficult for the court to evaluate the specific time claimed. Handicapped as we are in this matter, we cannot determine the reasonable time spent in defending this suit. For the above stated reasons, the defendants' Application for Attorneys Fees' and Costs (docket entry 144) is GRANTED. Defendants are granted a term of twelve (12) days after notice of this order in which to file a revised time sheet providing enough detail[6] for the court to make its determination. Items which fail to provide the necessary detail will be completely stricken.

SO ORDERED.

At San Juan, Puerto Rico, on September 28, 2006.

S/CARMEN CONSUELO CEREZO
United States District Judge

---

[6] For further guidance, defendants may refer to the courts' standing orders for the preparation of CJA fee vouchers and attorney fee petitions in social security cases.